# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

**BILLY RAY STONE,**      )
                          )
    **Plaintiff,**    )
                          )
**v.**                    )   Civil Action Number
                          )   **5:16-cv-00381-AKK**
                          )
**STATE AUTOMOBILE MUTUAL**  )
**INSURANCE COMPANY,** *et al.*,  )
                          )
    **Defendants.**   )

## MEMORANDUM OPINION

Billy Ray Stone pursues this action against State Automobile Mutual Insurance Company ("State Auto") for breach of contract and bad faith. Doc. 1-4. Stone contends that State Auto refused or failed to pay Stone the amount due to him under his automobile insurance policy (Count I) after an accident with an uninsured or underinsured motorist, and acted in bad faith in intentionally refusing to pay an agreed upon settlement amount of $30,000 (Count II). *Id.* Stone originally filed this action in the Circuit Court of Madison County, Alabama, and State Auto subsequently removed it to this court. Docs. 1; 1-4. The court has for consideration State Auto's motion for summary judgment, doc. 19, which is fully briefed, docs. 19-1; 34; 35, and ripe for review. State Auto and the individual defendants whom Stone seeks to add through his First Amended Complaint (Holly

1

Sutton, Theresa Gad, and Earl T. Forbes), doc. 26, also filed a motion to strike, doc. 29, the amended complaint. For the reasons stated below, the motions to strike and for summary judgment are due to be granted.

## I.   MOTION TO STRIKE

Stone filed an amended complaint, whereby Stone joined three additional parties — State Auto claims adjusters Sutton and Gad, and Wilmer & Lee, P.A. attorney Earl T. Forbes — and amended the pleadings to include three additional claims arising out of the $30,000 settlement agreement with State Auto. Docs. 26 at 6; 29 at 2. The amended complaint includes breach of contract and bad faith claims (Counts I and II) against Sutton, Gad, and Forbes, and fraud claims (Counts III, IV, and V) against State Auto, Sutton, Gad, and Forbes. *See generally* doc. 26. The motion to strike is due to be granted.

### A. The Amended Complaint Violates Rule 15(a)

"A party may amend its pleading once as a matter of course within . . . 21 days after serving it, or . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." *Id.* Stone is not entitled to amend his complaint as a matter of course under Rule 15(a), because he filed the amended

complaint eight months after State Auto removed the case to this court, *see* docs. 1; 26, and well over the "21 days after service of a responsive pleading" limit, *see* doc. 3 — and State Auto did not file any Rule 12(b), (e), or (f) motions that would have similarly given Stone leave to amend. As such, consistent with Rule 15(a), Stone can only amend with leave of the court. In light of Stone's failure to obtain leave to amend, the amended complaint is due to be stricken under the Scheduling Order. *See* doc. 18 at 3 ("Unless the party's pleading may be amended as a matter of course pursuant to Fed. R. Civ. P. 15(a), the party must file a Motion for Leave to Amend.").

### B. The New Claims Are Futile

Even if Stone had moved to amend, the court would have denied the request on futility grounds. Although the court "should freely give leave [to amend a pleading] when justice so requires," Fed. R. Civ. P. 15(a), Stone's new claims fail on their merits. First, as to Counts I and II, which Stone amended to include State Auto's counsel (Forbes) and employees (Sutton and Gad), under Alabama law, "claims for breach of contract and bad faith based on an insurance contract may only be brought against a party to that contract." *Butler v. Allstate Indem. Co.*, No. 3:09-CV-838-WKW-WO, 2010 WL 381164, at *3 (M.D. Ala. 2010) (holding that an insurance agent is not a proper defendant for the plaintiff's breach of contract and bad faith claims); *Wright v. State Farm Fire & Cas. Co.*, No. CIV. A. 96-A-

1663-N, 1997 WL 114902, at *3 (M.D. Ala. 1997) (citing *Ligon Furniture Co. v. O.M. Hughes Ins. Co., Inc.*, 551 So. 2d 283, 285 (Ala. 1989)) ("Thus, while an *adjuster or other agent* may commit [bad faith] acts . . . it is the company which is liable.") (emphasis added); *Pate v. Rollison Logging Equip., Inc.*, 628 So. 2d 337, 343 (Ala. 1993) (insurance broker was not liable for breach of contract because he acted to place the insurance and was not a party). Therefore, because there is no assertion in the amended complaint that Forbes, Sutton, or Gad were parties to the contract between Stone and State Auto, the proposed breach of contract and bad faith claims against them are futile.

Likewise, the fraud claims (Counts III, IV, and V) are also futile. An essential element of fraud is that the plaintiff must have reasonably relied on the alleged misrepresentation. *Waddell & Reed, Inc. v. United Inv'rs Life Ins. Co.*, 875 So. 2d 1143, 1160 (Ala. 2003), *as modified on denial of reh'g* (Sept. 5, 2003) (citations omitted). In fact,

> [i]f the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts, the plaintiffs should not recover . . . . If the purchaser blindly trusts, where he should not, and closes his eyes where ordinary diligence requires him to see, he is willingly deceived, and the maxim applies, "volunti non fit injuria."

*Id.* (internal citations and quotations omitted). Here, Stone signed a "Full and Final Release" that, among other things, obligated him to provide information regarding Medicare/Medicaid liens. Doc. 19-20 at 4–5. By signing the agreement, Stone

4

knew and accepted his duty to investigate any Medicare liens and provide State Auto with "any and all" information requested regarding such liens. Stone has no credible basis to plead that State Auto, or any of its agents, misrepresented his responsibilities regarding Medicare liens.[1] To the contrary, the language in the agreement is clear, and a reasonably prudent person — especially one who, as was the case here, was represented by counsel — could have discovered that Stone's ability to receive his settlement check was contingent on his providing the requested information regarding potential Medicare liens.

In conclusion, for all the aforementioned reasons, State Auto's motion to strike, doc. 29, Stone's Amended Complaint is due to be granted.

## II. SUMMARY JUDGMENT STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." To support a summary judgment motion, the parties must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or

---

[1] In fact, as to Sutton and Gad, Stone failed to plead his fraud claims with the required particularity under Rule 9(b) of Fed. R. Civ. P. To do so, "[t]he pleading must show time, place and the contents or substance of the false representations, the facts misrepresented, and an identification of what has been obtained." *Bethel v. Thorn*, 757 So. 2d 1154, 1158 (Ala. 1999) (quoting *Phillips Colleges of Alabama, Inc. v. Lester*, 622 So. 2d 308, 311 (Ala.1993)). Stone fails to specify the time, place, contents or substance of the alleged false representations or misrepresented facts made by Sutton and Gad, and, instead, generally asserts that Sutton and Gad followed instructions they received from State Auto. Doc. 26 at 5–14.

declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). Moreover, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's

version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

### III.    FACTUAL BACKGROUND

After sustaining injuries in an automobile accident with Bradley James Frye, Medicare paid $80,296.19 in conditional payments to help Stone cover his medical costs. Docs. 19-3 at 4; 19-6 at 2; 19-7. Thereafter, Stone filed a lawsuit against Frye and State Auto in the Circuit Court of Madison County, Alabama, pleading negligence, wantonness, and recklessness claims against Frye and uninsured/underinsured motorist policy ("UM/UIM") claims against State Auto. Doc. 19-3. Stone subsequently settled his claims against Frye for the full amount of Frye's automobile liability limits. Doc. 19-17. Relevant here, Stone eventually accepted a $30,000 settlement offer from State Auto by signing a Full and Final Release, in which Stone agreed to investigate and pay any current Medicare lien and to provide State Auto with a copy of any Medicare lien satisfaction letter or

file closure letter. Doc. 19-20 at 4. Stone also agreed to provide State Auto with "any and all information required for compliance with the Medicare Mandatory Insurer Reporting requirement" pursuant to 42 U.S.C. §1395y(b)(8) within thirty (30) days of the request. *Id.* at 5.

About a week after Stone executed the Release, counsel for Stone e-mailed State Auto to inquire about the settlement check. Doc. 19-21. State Auto replied that although it had confirmed the satisfaction of previously existing Medicare liens based on Stone's settlement of his claims against Frye, *see* doc. 19-21 at 2–3, it needed an updated confirmation from Medicare that no additional Medicare lien existed, as Medicare had the right to adjust its final lien amount based on the $30,000 settlement Stone reached with State Auto. *Id.* at 3. State Auto requested that Stone sign a "Centers for Medicare & Medicaid Services" ("CMS") consent form that would allow State Auto to communicate directly with Medicare to confirm that Medicare would not seek any additional payments from Stone. *Id.* at 2. However, Stone never signed the consent form and never provided the confirmation that his Medicare file is closed as to this accident. Docs. 19-22–19-25. As a result, State Auto has refused to tender the settlement check. *See generally* doc. 19-1; *see also* docs. 1-4; 19-21 at 2. Frustrated with State Auto's position, Stone filed the present action, alleging breach of contract and bad faith claims against State Auto for failure or refusal to pay the settlement amount. Doc. 19-28

at 2.

## IV. ANALYSIS

The lawsuit asserts two separate counts: (1) an alleged breach of contract (Count I) for "refus[ing] and/or fail[ing] to pay [Stone] the amount due under said policy [the UM/UIM policy]," doc. 19-28 at 4, and (2) alleged bad faith (Count II) for intentionally refusing to pay Stone's UM/UIM claim without any debatable reason, *id.* at 5–6. State Auto contends that Stone cannot establish either claim, and has moved for summary judgment. *See* doc. 19. The court will address each respective count below.

### A. State Auto's Alleged Breach Of The Policy (Count I)

The court turns first to Stone's contention that State Auto breached the settlement agreement when it refused or failed to pay Stone the agreed upon settlement amount. Doc. 1-4 at 4.[2] A plaintiff seeking to recover for breach of contract must show that he *performed* under the terms of the contract. *See State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 303 (Ala. 1999) (A plaintiff can establish a breach-of-contract claim by showing "(1) the existence of a valid contract binding the parties in the action, (2) *his own performance under the contract*, (3) the defendant's nonperformance, and (4) damages.") (emphasis

---

[2] State Auto argues that Stone's breach of contract claim is due for dismissal because "State Auto has not breached the insurance policy issued to [Stone]," but instead, asserts a breach of the Full and Final Release, a different contract. Doc. 19-1 at 15. Regardless of the semantics here, Stone's claim is based on a purported breach of the settlement agreement he reached pursuant to Stone's insurance policy with State Auto.

added) (internal quotations and citations omitted). Stone has failed to make this showing, because, among other things, under the "Full and Final Release" he signed, Stone agreed "to investigate and assume any responsibility and/or liability to pay any current Medicare/Medicaid liens that may be related to the injury in question" and to provide State Auto with "a copy of the Medicare lien satisfaction letter/final closure letter . . . to validate the Medicare lien has been fully satisfied and the MSPRC has closed their file." Doc. 19-20 at 4. Moreover, Stone acknowledged that he "understood and agreed . . . to provide [State Auto] within thirty (30) days of their request any and all information required for compliance with the Medicare Mandatory Insurer Reporting requirement, 42 U.S.C. § 1395y(b)(8)." *Id.* at 5. Although Stone provided proof that he had satisfied the existing Medicare lien after he reached a settlement with the driver of the other car, *see* docs. 19-17; 19-21 at 2–4; 19-34 at 12, Medicare, however, had the right to seek part of the settlement proceeds from State Auto to recoup any remaining funds it was owed for Stone's medical expenses.[3] As Stone acknowledged through

---

[3] Indeed, during the period in which the parties were debating this issue, docs. 19-6; 19-24; 19-25, Medicare informed the parties that it was still investigating this matter and intended to seek recovery of monies owed to it: "[p]lease be advised that [CMS is] still investigating this case file to obtain any other outstanding Medicare conditional payments. Therefore, the enclosed listing of current conditional payments (including a response of a zero amount) is not a final listing and will be updated once [CMS] receive[s] final settlement information from [State Auto]." Doc. 19-6 at 3. Medicare's notice to the parties is consistent with its rights under the regulations. *See* 42 C.F.R. §§ 411.24(b)–(c) ("CMS may initiate recovery as soon as it learns that payment has been made or could be made under . . . any liability or no-fault insurance . . . " and "[i]f it is not necessary for CMS to take legal action to recover, CMS recovers the lesser of the following: (i) [t]he amount of the Medicare primary payment" or "(ii) [t]he full primary payment amount that

his interrogatory responses in his initial lawsuit against Frye and State Auto in the Circuit Court of Madison County, Alabama (Civil Action No. CV-2013-900278), "Medicare and Blue Cross Blue Shield of Alabama have paid my medical bills. Medicare and [BCBS] have subrogation rights for what they have paid on my behalf." Doc. 19-34 at 12. As a party with subrogation rights and in order to recover the payments it made on behalf of an insured, Medicare had the right to place a lien on each settlement an insured may have secured for the loss in question. To the extent that Stone believed he had fully exhausted his obligations to Medicare and owed no additional monies, he should have provided the necessary information to State Auto or signed the release for State Auto to obtain confirmation.

Ultimately, while Stone is free to quibble with State Auto's decision to insist that Stone provide proof of the exhaustion of the lien, he cannot challenge State Auto's request for this information as an alleged contractual breach. After all, the settlement agreement Stone signed gave State Auto the right to require this information prior to disbursing the settlement funds, and also required that Stone provide "any and all information required for compliance with the Medicare

---

the primary payer [State Auto] is obligated to pay under this part without regard to any payment, other than a full primary payment that the primary payer has paid or will make, or, in the case of a primary payment beneficiary, the amount of the primary payment"); 411.26(b) ("CMS may join or intervene in any action related to the events that gave rise to the need for services for which Medicare paid.").

Mandatory Insurer Reporting requirement." Doc. 19-20 at 5. As of the end of the briefing period for this motion, Stone still had not provided the requested Medicare information to State Auto. *See* docs. 19-24 at 2–4; 19-25 at 2; 34-1 at 2. By failing to prove his own performance under the settlement agreement or to establish that State Auto's insistence upon receiving updated Medicare information violated the terms of the settlement agreement, the breach of contract claim (Count I) fails.

### B. State Auto's Alleged Bad Faith Refusal To Pay Settlement (Count II)

According to Stone, State Auto acted in bad faith by "intentionally refus[ing] to pay" him the money due under the settlement agreement without "any reasonably legitimate, arguable, or debatable reason." Doc. 1-4 at 5. Any bad faith claim under Alabama law requires a plaintiff to prove, among other things, "an insurance contract between the parties and a breach thereof by the defendant . . . ." *State Farm Fire and Cas. Co. v. Brechbill*, 144 So. 3d 248, 257 (Ala. 2013) (quoting *National Sec. Fire & Cas. Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982)). In light of Stone's failure to prove that State Auto breached the insurance, or settlement, contract,[4] *see supra*, summary judgment is due on the bad faith claim.

---

[4] In dicta, the Supreme Court of Alabama recommended that to avoid "the recurring confusion now leading to inconsistent jury verdicts on breach-of-contract and bad-faith claims," trial courts should add the following sentence to Jury Instruction 20.37 of the Alabama Pattern Jury Instructions–Civil: "In order to find for the plaintiff on his/her bad-faith count, you must have found for the plaintiff on his/her breach-of-contract count." *Ex parte Alfa Mut. Ins. Co.*, 799 So. 2d 957, 964 (Ala. 2001).

Alternatively, the claim also fails because of Stone's failure to establish "the absence of any reasonably legitimate or arguable reason for [State Auto's] refusal." *Brechbill*, 144 So. 3d at 257. A delay in reviewing or paying a claim may not form the basis of bad faith "without proof of a bad faith refusal or the lack of a reasonable basis to withhold payment." *Pierce v. Combined Ins. Co. of Am.*, 531 So. 2d 654, 657 (Ala. 1988). Therefore, to prevail on his claim, Stone must prove the absence of any reasonably legitimate or arguable reason for State Auto's delay. *See Brechbill*, 144 So. 3d at 257. Stone cannot make such a showing here, because State Auto has an arguable reason for the delay: *i.e.*, its legal obligations to Medicare. Under the relevant regulations, State Auto is a "primary" insurance plan, *see* 42 U.S.C. § 1395y(b)(2)(A),[5] and Medicare is a secondary payer authorized to make conditional payments when it is not reasonably expected for a primary plan to make a prompt payment. 42 U.S.C. § 1395y(b)(2)(B). In such occasions, however, the primary plan must then reimburse Medicare. *Id.*

It is undisputed that Medicare made conditional medical payments on Stone's behalf.[6] Docs. 19-1 at 3; 19-27 at 17, 24–25; 19-34 at 12; 34 at 1–2. As a

---

[5] Here, a "primary plan" means "a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance . . . ." 42 U.S.C.A. § 1395y(b)(2)(A).

[6] On August 25, 2015, Medicare notified State Auto that, as of that date, it had identified $80,296.19 in payments it had made on Stone's behalf associated with Stone's accident and that it planned to exercise its right to recover these funds from any proceeds Stone recovered from qualifying third parties, including "from any entity responsible for making primary payments."

result, Medicare has the right — and frankly, the obligation to the taxpayers who fund it — to initiate recovery of those payments from State Auto once it learns that State Auto has made or could make payments to Stone. 42 C.F.R. §§ 411.24(b); 411.26. To ensure that Medicare recoups its funds, the regulations state unequivocally that, with respect to liability insurance settlements like the one here, if Medicare is not fully reimbursed within sixty (60) days of the settlement payment, "the primary payer [*i.e.*, State Auto] must reimburse Medicare even though it has already reimbursed the beneficiary or other party." 42 C.F.R. § 411.24(i)(1); *see also Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1239 (11th Cir. 2016) ("If a beneficiary or other party fails to reimburse Medicare within 60 days of receiving a primary payment, the primary plan 'must reimburse Medicare even though it has already reimbursed the beneficiary or other party.'"). Stated differently, if State Auto pays Stone without ensuring that all of the Medicare liens are addressed, then State Auto — not Stone — will still have to reimburse Medicare. To avoid the potential of paying twice — to Stone and then to Medicare, State Auto prudently and reasonably withheld payment of the settlement funds until Stone confirmed that Medicare would not seek further reimbursement from State Auto for any additional funds. Doc. 19-1 at 19. Consistent with the

---

Doc. 19-6 at 2–3. Although Stone disputes the amount Medicare ultimately paid on his behalf, he concedes that the actual amount is not material to this dispute. Doc. 34 at 1 ("In fact, [the amount] is irrelevant and immaterial to this matter."). Both parties agree, however, that Medicare made conditional medical payments on Stone's behalf and, as a result, Medicare had corresponding subrogation rights. Docs. 19-1 at 3; 19-27 at 17, 24–25 ; 19-34 at 12; 34 at 1–2.

settlement agreement, State Auto asked Stone to either present a formal confirmation that his Medicare file was closed as to all medical costs stemming from the automobile accident in question, or to sign a consent form allowing State Auto to directly inquire with Medicare. Docs. 19-16; 19-20; 19-21; 19-22; 19-24; 19-25. For reasons that Stone did not address in this record, Stone failed to fulfill the request. Docs. 19-20; 19-21; 19-22; 19-24; 19-25. Having failed to comply fully with the terms of the agreement by doing his part to comply with the law related to Medicare reimbursement, Stone has no credible basis to assert that State Auto acted in bad faith. In short, State Auto's decision to withhold the settlement payment is a reasonably legitimate or arguable reason in light of the uncertainty of any potential Medicare liens.

## V.   CONCLUSION

For the aforementioned reasons, State Auto's motions for summary judgment, doc. 19, and to strike, doc. 35, are due to be granted. The court will enter a final order contemporaneously herewith.

**DONE** the 15th day of February, 2017.

                                                                  _____
                                                                  **ABDUL K. KALLON**
                                                                  UNITED STATES DISTRICT JUDGE